UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X

KELLY ELIZABETH FOX,

                                    Plaintiff,

          -against-

NORTHWELL HEALTH, INC., THOMAS
GUY, STEPHANIE RUSSO, and JUDE
KOTSOVOLOS,

                                    Defendants.

------------------------------------------------------------X

**MEMORANDUM
AND ORDER**
22-CV-4512 (SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court in this employment discrimination action is a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") filed by Defendants Northwell Health Inc. ("Northwell"), Stephanie Russo ("Russo"), and Jude Kotsovolos ("Kotsovolos" and collectively, "Defendants").  *See* Docket Entry ("DE") [47].  Plaintiff Kelly Elizabeth Fox ("Fox" or "Plaintiff") opposes Defendants' motion.  DE [48].  For the reasons set forth below, Defendants' motion is granted in its entirety and this action is dismissed.

I.    **BACKGROUND**

    A.    **Relevant Facts**

The facts are drawn from the pleadings, Defendants' Local Rule 56.1 Statement of Material Facts ("Defs.' 56.1 Stmt."), DE [47-1], and Plaintiff's Rule 56.1

Counterstatement of Material Facts ("Pl.'s 56.1 Counterstmt."), DE [48-1], as well as the admissible evidence relied upon in support of the respective statements.[1]

### 1.    Parties and Relevant Individuals

In July 2016, Plaintiff began working at Peconic Bay Medical Center ("PBMC") as a Surgical Technologist. *See* Pl.'s 56.1 Counterstmt. ¶ 5. PBMC is a member of the Northwell system of healthcare facilities. *Id.* at ¶ 1. While not addressed at length in the parties' briefing, there is no dispute that Northwell employed Fox. In her role as a Surgical Technologist, Fox was responsible for, among other things, participating in "turnover activities and room set up for each surgical procedure, including connection of suction, electrical cords, power cables and electrocautery; breaking down of operating room following each surgical procedure; and assisting with ensuring adequate supply of stock for patient care." *Id.* at ¶ 7. In August 2016, PBMC hired Thomas Guy ("Guy") as a Surgical Technologist, a role in which he performed the same duties as Plaintiff.[2] *Id.* at ¶¶ 6-8.

Defendant Russo worked at PBMC as Director of Perioperative Services from June 2016 until 2023. *Id.* at ¶ 2. Russo was primarily responsible for overseeing

---

[1] Contrary to Plaintiff's assertion that "[t]he material facts in dispute here are abundant," *see* Pl.'s Opp'n at 1, of the 156 statements in Defendants' Rule 56.1 Statement, Fox denies five facts. *See* Pl.'s 56.1 Counterstmt. ¶¶ 72, 81, 94, 113, 133. The Court considers the remaining facts that are supported by admissible evidence to be undisputed. Local Civ. R. 56.1(c); *see Ortiz v. BK Venture Grp. Ltd.*, No. 22-CV-3766(SJB), 2024 WL 1308410, at *1 (E.D.N.Y. Mar. 27, 2024) (holding that a party moving for summary judgment must support its position by citing to admissible evidence from the record"); *Kirkland-Hudson v. Mt. Vernon City Sch. Dist.*, No. 21-CV-695(KMK), 2024 WL 4277940, at *1 n.1 (S.D.N.Y. Sep. 23, 2024) ("A court may not grant summary judgment based on a fact in a Rule 56.1 Statement—even if undisputed—not supported by admissible evidence."). Accordingly, in the interest of conciseness, where Plaintiff does not dispute Defendants' statements of fact, the Court cites to Plaintiff's Rule 56.1 Counterstatement.

[2] Although Guy was initially a Defendant, pursuant to a July 1, 2024 Stipulation of Dismissal, Fox dismissed her claims against him. DE [43].

PBMC's Perioperative Services Department, including ensuring employee engagement, patient experience, operational success, and financial viability. *Id.* at ¶ 3. Russo held a supervisory position with the authority to hire and fire employees. *Id.* Defendant Kotsovolos worked at PBMC as Assistant Director of Perioperative Services begging on approximately May 1, 2017. *Id.* at ¶ 4. The exact nature of her role is not described, but she held a supervisory position with the ability to hire and fire employees. *Id.* As described below, both Russo and Kotsovolos were involved in Fox's termination.

        2.    <u>PBMC's Relevant Policies</u>

Plaintiff agreed to PBMC's policies and practices. *Id.* at ¶ 9. This included a Non-Discrimination and Non-Harassment policy (the "Non-Discrimination Policy"), which includes a Sexual Harassment Prevention Addendum (the "Sexual Harassment Policy"). *Id.* at ¶ 10. The Sexual Harassment Policy informs employees that they may report possible instances of sexual harassment by "promptly report[ing] it to their Site Human Resources department ("Site HR") or a supervisor or manager," by "completing Northwell Health's Sexual Harassment Complaint form (contained in the appendix to [the] policy) and submit[ting] it to the employee's Site HR department or a supervisor or manager," or by submitting an anonymous report through the Compliance HelpLine." *Id.* at ¶ 13.

PBMC also enforces an Excessive and/or Patterned Absenteeism and Lateness Policy (the "Absenteeism Policy"). *Id.* at ¶ 15. The Absenteeism Policy defines "excessive absenteeism" for employees working a 10 to 12 hour shift as "[a]n

employee's third (3rd) occasion of absence in any three (3) month period," "[a]n employee's fifth (5th) occasion of absence in any six (6) month period," or "[a]n employee's seventh (7th) occasion of absence in any twelve (12) month period." *Id.* at ¶ 16. The Absenteeism Policy states that a pattern of absences or lateness "is an independent basis for discipline even if the absences or lateness are not excessive as defined" in the policy. *Id.* at ¶ 17.

Finally, PBMC has a Code of Conduct (the "Code of Conduct") that "define[s] personal and professional standards of conduct and acceptable behaviors for all people while carrying out assigned responsibilities at PBMC." *Id.* at ¶ 19. The Code of Conduct requires employees to "[t]reat all persons . . . with respect, courtesy, caring, dignity and a sense of fairness and with recognition of, and sensitivity to, the needs of individuals from diverse backgrounds." *Id.* at ¶ 20. It further requires employees to "[c]ommunicate openly, respectfully and directly with team members . . . in order to optimize health services and to promote mutual trust and understanding." *Id.* at ¶ 21. The Code of Conduct also prohibits "obscene language or gestures." *Id.*

### 3.    Plaintiff's Allegations of Discriminatory Conduct

Plaintiff claims that, in April 2018, Guy spoke derisively towards her, calling her a "dumb bitch," a "useless cunt," and the "whiniest bitch [he] ever met." *Id.* at ¶ 66. Fox further claims that "Mr. Guy called her 'a stupid bitch, dumb, useless, lazy, no one liked [her], whiniest bitch her [*sic*] ever met." *Id.* at ¶ 146.[3] She did not

---

[3] While Plaintiff asserts that, in April 2018, Guy smirked at her, *see* Pl.'s 56.1 Counterstmt. ¶ 59, and "burst angrily into the operating room and hit her on her left arm and shoulder with the door," *id.* at

complain to Northwell about Guy's conduct or language until October 2018, and she only did so while being interviewed in conjunction with an investigation of another employee's complaint about Guy. *Id.* at ¶¶ 93-96. During that interview, Fox stated that Guy had previously called her "a brat, piece of shit and a fucking asshole." *See* Declaration of John C. Luke ("Luke Decl."), DE [48-2], Ex. Q. Although Plaintiff produced records of interview notes in support of her instant motion, *id* at Exs. F, Q, there is no evidence that she formally reported that Guy called her a "dumb bitch," a "useless cunt," or the "whiniest bitch [he] ever met" as she asserts in opposition to Defendants' motion. Moreover, two non-parties conducted the interview of Plaintiff related to the unrelated employee's complaint and neither Russo nor Kotsovolos had knowledge of what Fox disclosed. *See* Pl.'s 56.1 Counterstmt. ¶ 97; Declaration of Stephanie Russo ("Russo Decl."), DE [47-4], ¶¶ 20-21; Declaration of Jude Kotsovolos ("Kotsovolos Decl."), DE [47-5], ¶ 14.

### 4.    Plaintiff's Disciplinary Record and Termination

Plaintiff had an extensive disciplinary record at Northwell, including the following:

- On March 8, 2017, Plaintiff received a verbal warning for nine violations of the Absenteeism Policy. Pl.'s 56.1 Counterstmt. ¶ 39.

- On April 20, 2017, Plaintiff received a verbal warning identifying eight separate instances in which she was "insubordinate," "loud, aggressive, and disrespectful," "angry," and "uncooperative, frustrated, and disrespectful." *Id.* at ¶ 43.

---

¶ 69, she neither asserts, nor does the evidence support, that that these actions were based on her sex. Plaintiff further concedes that she "chose not to say anything" after Guy allegedly hit her with the door. *Id.* at ¶ 147. These claims are therefore immaterial and do not warrant consideration.

- On February 1, 2018, Plaintiff received a written warning for seven violations of the Absenteeism Policy. *Id.* at ¶ 48.

- On June 21, 2018, Plaintiff received a two-day suspension for five violations of the Absenteeism Policy. *Id.* at ¶ 88.

- On October 31, 2018, Plaintiff received a one-day suspension for using language such as "kicking [my] ass" and "fucking unbelievable." *Id.* at ¶ 112.

- In May and June of 2019, at least three employees complained about Plaintiff's conduct, including her inappropriate and intimidating conduct, as well as her use of profane language. *Id.* at ¶¶ 118, 120, 122, 125.

- On August 29, 2019, Assistant Nurse Manager Amanda DeRusso complained that Plaintiff failed to appear for her shift that day, and that Fox stated the following day that DeRusso gave her a "bad" assignment because DeRusso "Fucking hates [her]." *Id.* at ¶¶ 128-30. Plaintiff told DeRusso, "Don't let the door hit you in the ass on the way out." *Id.* at ¶ 132.

- On October 2, 2019, Plaintiff stated, "I don't fucking care" when a colleague "informed her that there was an incorrect count of surgical instruments." *Id.* at ¶ 136.

- On October 3, 2019, when a Surgical Technician told Plaintiff to take her break, she responded, "I am not breaking – you can tell her to mind her own fucking business." *Id.* at ¶ 137.

Ultimately, on October 7, 2019, Northwell terminated Fox for "using profane language towards co-workers." *Id.* at ¶ 138. The termination notice stated that Fox "used loud and profane language towards the Assistant Nurse Manager in a public area," was "unprofessional when speaking with a Surgical P.A.," and "used profane language when asked a question by another Surgical Tech." *Id.* at ¶ 139. Russo gave Plaintiff the termination notice and Kotsovolos was present to witness the termination. *Id.* at ¶¶ 140-41. Plaintiff denies that she is the only person to use profane language and claims that the allegations were only raised after she complained about Guy. *Id.* at ¶ 142. She does not, however, claim that she was

disciplined or terminated because of being a member of any protected class.  Although Plaintiff filed a grievance regarding her termination pursuant to a collective bargaining agreement, her termination was upheld.  *Id.* at ¶¶ 143, 148.

### B.    Procedural Background

On June 3, 2020, Plaintiff filed a Charge of Discrimination with the New York State Division of Human Rights ("NYSDHR"), which she cross-filed with the United States Equal Employment Opportunity Commission ("EEOC").  *Id.* at ¶ 149.  On November 3, 2021, at Plaintiff's request, the NYSDHR dismissed Fox's complaint "for administrative convenience."  *Id.* at ¶ 154.  The EEOC issued a Dismissal and Notice of Right to Sue on May 19, 2022.  *Id.* at ¶ 155.

By way of a Complaint dated August 1, 2022, Plaintiff commenced this action against Defendants, asserting causes of action for:  (1) sex/gender discrimination under Title VII related to a hostile work environment; (2) retaliation under Title VII; (3) sex discrimination under the NYSHRL related to a hostile work environment; (4) aiding and abetting discrimination under the NYSHRL; and (5) retaliation under the NYSHRL.  DE [1].  On September 13, 2024, the remaining Defendants filed the instant motion for summary judgment, which Plaintiff opposes.  DE [47], [48].  For the reasons set forth herein, Defendants' motion is granted in its entirety.

## II.    LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant bears

the burden of establishing that there are no issues of material fact such that summary judgment is appropriate. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2004). In deciding the motion, the Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986) (holding that a motion for summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the movant has met its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356 (1986) (internal quotation omitted); *see Maxton v. Underwriter Labs., Inc.*, 4 F. Supp. 3d 534, 542 (E.D.N.Y. 2014) ("An issue of fact is considered 'genuine' when a reasonable finder of fact could render a verdict in favor of the non-moving party"). In determining whether summary judgment is warranted, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986); *see Artis v. Valls*,

No. 9:10-CV-27(GTS)(TWD), 2012 WL 4380921, at *6 n.10 (N.D.N.Y. Sep. 25, 2012) ("It is well established that issues of credibility are almost never to be resolved by a court on a motion for summary judgment.").

## III.    DISCUSSION

In moving for summary judgment, Defendants argue:  (1) Plaintiff's Title VII causes of action are untimely because Fox did not file a charge of discrimination within 300 days of the allegedly discriminatory conduct; (2) Plaintiff's hostile work environment claims arising under the NYSHRL are untimely as they were not filed within the applicable 3-year statute of limitations; and (3) that all of Plaintiff's causes of action fail on their merits.  *See generally* Defs.' Mem.  Plaintiff failed to timely file her hostile work environment claims and she fails to identify any pertinent issue of fact with respect to her retaliation claims.   Accordingly, Defendants' motion is granted in its entirety.

### A.    <u>Plaintiff's Hostile Work Environment Claims are Untimely</u>

#### 1.    <u>Federal Claims for Hostile Work Environment</u>

The EEOC requires that a plaintiff asserting a Title VII claim file a complaint with the EEOC within 180 days of the complained conduct.  *See* 42 U.S.C. § 2000e-5(e)(1).   The NYSDHR allows 300 days for a plaintiff to file a complaint of discrimination.  *See Tillman v. Luray's Travel*, 137 F. Supp. 3d 315, 326 (E.D.N.Y. 2015) (observing that a charge of discrimination must be filed with the NYSDHR "within 300 days of the alleged discriminatory act as a prerequisite to bringing that claim in federal court").  Where, as here, there are "local administrative mechanisms

for pursuing discrimination claims," the 300-day deadline applies to both the EEOC and the NYSDHR.  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 79 (2d Cir. 2015) ("Title VII requires that individuals aggrieved by acts of discrimination file a charge with the EEOC within 180 or, in states like New York that have local administrative mechanisms for pursuing discrimination claims, 300 days after the alleged unlawful employment practice occurred.") (internal quotation marks omitted)); *Johnson v. Buffalo Police Dep't*, 46 F. App'x 11, 13 (2d Cir. 2002) ("Title VII requires an aggrieved party to file a charge of discrimination with either the [EEOC] or [NYSDHR] within 300 days of the alleged act of discrimination; the failure to do so will result in the claims being time-barred."); *Rasko v. New York City Admin. for Children's Servs.*, 734 F. App'x 52, 54 (2d Cir. 2018) ("Under Title VII, a plaintiff in New York must file a complaint with the EEOC within 300 days of a discriminatory act."); *Fanelli v. New York*, 51 F. Supp. 3d 219, 227 (E.D.N.Y. 2014) ("[B]ecause the Plaintiff filed her EEOC charge with both the EEOC and the NYSDHR, the applicable statute of limitations period to file her EEOC charge was 300 days from the alleged occurrence of the unlawful employment practice.").  Nevertheless, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 122 S. Ct. 2061, 2072; *Ball v. Marriott Int'l, Inc.*, 627 F. Supp. 3d 296, 314 (S.D.N.Y. 2022) ("Thus, '[a] charge alleging a hostile work environment claim . . . will not be time barred so long as acts which constitute the claim are part of the same unlawful employment practice and at least

one act falls within the time period.'") (quoting *Morgan*, 536 U.S. at 122, 122 S. Ct. at 2061).

The 300-day deadline to file a charge of discrimination "is analogous to a statute of limitations." *Kaba v. Hope Home Care*, No. 23-CV-9512(OEM)(LB), 2024 WL 1679327, at *2 (E.D.N.Y. Apr. 18, 2024) (citing *Vega*, 801 F.3d at 79); *see Morgan*, 536 U.S. at 109, 122 S. Ct. at 2070 (holding that a claim is time-barred if an EEOC charge is not timely filed "within 300 days of the employment practice"); *Kirk v. Mt. Vernon City Sch. Dist.*, No. 23-CV-7441(CS), 2024 WL 3794591, at *4 ("This requirement functions as a statute of limitations that bars a plaintiff's claims of an administrative claim is not timely filed."). Accordingly, even where the EEOC issues a Notice of Right to Sue with respect to an untimely claim, the claim is not viable. *Mauro v. New York City Transit Auth.*, No. 09 Civ. 4732(DLC), 2010 WL 1424009, at *2 (S.D.N.Y. Apr. 9, 2010) ("While plaintiff timely filed his Federal lawsuit within ninety days upon receipt of the EEOC right-to-sue letter, such a letter 'enables a private suit only if it is issued in connection with an administrative charge that is timely filed.'") (quoting *McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 213 (2d Cir. 2006)); *Churaman-Jadoo v. Daniels*, No. 23-CV-08482(JMA)(LGD), 2025 WL 2614943, at *3 (E.D.N.Y. Sept. 10, 2025) ("To prevail on a Title VII cause of action, a plaintiff must first exhaust administrative remedies by (i) filing an administrative charge with the EEOC within 300 days after an alleged unlawful employment practice occurred, (ii) receiving a right-to-sue letter from the EEOC, and (iii) suing in

court within 90 days of receiving that right-to-sue letter.") (citing *see Duplan v. City of New York*, 888 F.3d 612, 621-22 (2d Cir. 2018).[4]

Fox filed her complaint with the NYSDHR on June 30, 2020, and cross-filed it with the EEOC on the same day.  Pl.'s Counterstmt. ¶ 149; *see* Declaration of Gomez-Sanchez ("Gomez-Sanchez Decl."), DE [47-2], Ex. G.    Thus, any allegedly discriminatory conduct that occurred prior to August 8, 2019 cannot form the basis of her Title VII claims, as it would have occurred more than 300 days before she complained to the NYSDHR.  *See Babayoff v. Pro Coverage Grp., Inc.*, No. 20-CV-4538(WFK)(PK), 2024 WL 5284000, at *4 (E.D.N.Y. Dec. 12, 2024) ("[A]n injured party must file a charge with either the [EEOC] or the relevant state agency (in New York, the [NYSDHR]) within 300 days of the alleged discriminatory act as a prerequisite to bringing that claim in federal court.") (quoting *Tillman*, 137 F. Supp. 3d at 326); *Roach v. Long Island R.R.*, 487 F. Supp. 3d 154, 169 (E.D.N.Y. 2020) ("[O]nly those discriminatory actions occurring on or after . . . 300 days prior to when [the plaintiff] filed a charge with the NYSDHR . . . may support a timely claim under Title VII.").

Plaintiff does not identify any discriminatory or harassing conduct that occurred within the 300 days prior to the date she submitted her complaint to the

---

[4] Although the EEOC initially sent a Notice of Right to Sue on January 4, 2022, "due to an administrative error, the Notice of Right to Sue was never sent" to Plaintiff's counsel's attention.  *See* Gomez-Sanchez Decl. Ex. L.  The EEOC re-sent the Notice of Right to Sue on May 19, 2022, informing Plaintiff that her 90 days to commence suit ran from that date.  *Id.*  While Plaintiff commenced this action within 90 days, the EEOC's Notice of Right to Sue does not render Plaintiff's claim timely or viable.  *See Morgan*, 536 U.S. at 109, 122 S. Ct. at 2070 (holding that a claim is time-barred if an EEOC charge is not timely filed "within 300 days of the employment practice"); *Kirk*, 2024 WL 3794591, at *4.

NYSDHR.  Relevant here, "[a] plaintiff must show either 'a single incident [that] was extraordinarily severe' or a 'series of incidents [that] were sufficiently continuous and concerted to have altered the conditions of [the] working environment.'"  *Campbell v. Bottling Grp., LLC*, 814 F. App'x 630, 633 (2d Cir. 2020) (quoting *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002)).    The only plausible evidence concerning a hostile work environment is that in April 2018, Guy spoke derisively towards her, calling her a "dumb bitch," a "useless cunt," and the "whiniest bitch [he] ever met."  *See* Pl.'s 56.1 Counterstmt. ¶¶ 66, 146.  Fox did not complain about Guy's conduct at the time it occurred.  Rather, following a complaint submitted by Fox's colleague on August 16, 2018, Defendants commenced an investigation of Guy's conduct.  *Id.* at ¶ 67. Northwell interviewed Fox, at which time she complained of Guy's conduct towards her.  Luke Decl. Ex. Q.  On October 25, 2018, Northwell completed its investigation and subsequently issued a written warning to Guy.  *Id.* at Ex. G.  Plaintiff does not identify hostile conduct that occurred after this.  In the Fox's Verified Amended Complaint filed with the New York State Division of Human Rights on September 20, 2021, Fox states that the "[d]ate most or continuing took place" was October 7, 2019.  *Id.* at Ex. I.  In the instant motion, however, she does not identify any allegedly hostile conduct that occurred after April 2108.

Accordingly, Plaintiff's claim for hostile work environment arising under Title VII fails as she does not identify any conduct supporting her hostile work environment claim that occurred in the 300 days prior to filing her complaint with an administrative agency.  *See McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d

Cir. 2010) ("Title VII's administrative exhaustion provision requires that any complaint be filed with the EEOC within 300 days of the alleged discriminatory act."); *King v. N. Amityville Fire Co., Inc.*, No. 19-CV-4643(JMA)(AYS), 2023 WL 4827103, at *7 (E.D.N.Y. July 27, 2023) ("Plaintiff's Title VII claims fail as she has not alleged any specific hostile act occurring in the 300-days prior to the filing of her . . . EEOC charge."). Accordingly, Plaintiff's claims for a hostile work environment arising under Title VII are time barred. *See Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 238 (E.D.N.Y. 2014) (holding that actions that occurred more than three years prior could not be considered for purposes of Title VII claims).

### 2.   State Law Claims For Hostile Work Environment

Plaintiff's hostile work environment claims arising under the NYSHRL, *see* Compl. ¶¶ 127-29, are also untimely. The NYSHRL provides that "[a]ny complaint filed pursuant to this section must be so filed within three years after the alleged unlawful discriminatory practice." *See* N.Y. Exec. L. § 297(5); *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 239 (2d Cir. 2007) ("[C]laims under the NYSHRL are time-barred unless filed within three years of the alleged discriminatory acts."); *Kirkland-Hudson*, 665 F. Supp. 3d at 446 ("NYSHRL claims have a three-year statute of limitations."). The last instance of hostility that Fox identifies occurred in April 2018 when Guy allegedly called her a "dumb bitch," a "useless cunt," and "the whiniest bitch that he had ever known." Luke Decl. Ex. G ("Fox Dep. Tr."), DE [48-2], at 175:11-14; *see* Pl.'s 56.1 Counterstmt. ¶ 72; Compl. ¶ 42.[5] Although Plaintiff

---

[5] Fox testified that Guy "either said things under his breath, or be like yeah, okay or whatever." Fox Dep. Tr. 214:2-4. She also testified that she complained that Guy "burst in angrily into the [operating

did not complain of this conduct at the time it occurred, she raised it during an investigation of another employee's complaint. *See* Pl.'s 56.1 Counterstmt. ¶¶ 66-67, 93-111. In November of 2018, Northwell issued a disciplinary warning to Guy regarding the other employee's complaint, concluding that Guy engaged in "Aggression, Hostility, and Violence In The Workplace." *See* Russo Decl. Ex. I. Northwell instructed Guy that he "must behave in a professional manner at all times consistent with Northwell Health's policies and procedures" and that "further infractions will result in further disciplinary action, up to and including termination." *Id.* The disciplinary warning does not name any employee by name, and Plaintiff does not identify further hostility by Guy or any other employee. As Plaintiff commenced this action on August 1, 2022, DE [1], more than 3 years after the last instance of alleged hostility, her claims for hostile work environment arising under the NHSHRL are therefore also untimely. *See Bowen-Hooks*, 13 F. Supp. 3d at 238; *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 607-608 (S.D.N.Y. 2011) (observing that the statute of limitations for hostile work environment claims under both NYSHRL is three years); *E.E.O.C. v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 875 (S.D.N.Y. 2013) ("Additionally, an employer's failure to investigate an employee's complaint cannot 'contribute[ ] to or constitute[ ] a hostile work environment.'")

---

room] and hit [her] with the door on [her] left arm and shoulder." *Id.* at 179:10 – 181:2. Her testimony establishes that these encounters occurred in April 2018 and, in any event, were not gender-oriented. *Id.* The Court, therefore, does not consider them.

(quoting *Fincher v. Depository Tr. & Clearing Corp.,* 604 F.3d 712, 724 (2d Cir.2010)).

Accordingly Defendants' motion for summary judgment is granted with respect to

Plaintiff's state and federal hostile work environment claims.

### B.    Plaintiff's Retaliation Claims Fail as a Matter of Law

Notwithstanding the foregoing, Northwell terminated Plaintiff within the 300

days preceding her complaint with the NYSDHR and the Court therefore considers

the merits of Fox's retaliation claims.  "Title VII prohibits employers from retaliating

'against any . . . employee[ ] . . . because [that individual] has opposed any practice'

made unlawful by Title VII." *Hampton v. Wilkie*, 554 F. Supp. 3d 512, 523 (E.D.N.Y.

2021) (quoting 42 U.S.C. § 2000e–3(a)).  Likewise, New York law provides:

> It shall be an unlawful discriminatory practice for any person engaged
> in any activity to which this section applies to retaliate or discriminate
> against any person because he or she has opposed any practices
> forbidden under this article or because he or she has filed a complaint,
> testified or assisted in any proceeding under this article.

N.Y. Exec. Law § 296(7).  Claims for retaliation under Title VII and the NYSHRL

apply the same standard.  *Abromavage v. Deutsche Bank Secs. Inc.*, No. 21-668, 2022

WL 4360950, at *1 (2d Cir. 2022) ("Title VII and NYSHRL retaliation claims are

analyzed under the same standard."); *Peterec v. TGI Fridays, Inc.*, No. 23-CV-

8028(KMK), 2024 WL 4337526, at *9 (S.D.N.Y. Sep. 25, 2024) ("Retaliation claims

brought under the NYSHRL are analyzed under the same framework as retaliation

claims brought pursuant to Title VII."); *Maynard v. Montefiore Med. Ctr.*, No. 18 Civ.

8877(LAP), 2021 WL 396700, at *5 (S.D.N.Y. Feb. 4, 2021) ("Claims under Title VII

and the NYSHRL are treated as analytically identical.") (internal quotation omitted).

Under both statutes, retaliation claims are analyzed under the burden-shifting approach promulgated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). *Schaper v. Bronx Lebanon Hosp. Ctr.*, 408 F. Supp. 3d 379, 390 (S.D.N.Y. 2019); *see Xu v. City of New York*, No. 08-CV-11339(AT)(RWL), 2020 WL 8671952, at \*32 (S.D.N.Y. Dec. 22, 2020) ("Title VII and NYSHRL claims are analyzed under the same burden-shifting framework.") (citing *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010).

Pursuant to the *McDonnell Douglas* framework:

> To make out a *prima facie* case of retaliation, a plaintiff must show: (1) they engaged in a protected activity; (2) their employer was aware of this activity; (3) the employer took adverse employment action against them; and (4) a causal connection exists between the alleged adverse action and the protected activity. *Summa v. Hofstra Univ.*, 708 F.3d 115, 2125 (2d Cir. 2013) (citing *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 608 (2d Cir. 2006)). Under the *McDonnell Douglas* burden-shifting framework, once the plaintiff establishes a *prima facie* case of retaliation, the burden of production shifts to the employer to demonstrate a legitimate, non-discriminatory reason for its action. *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802-03, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973); *Summa*, 708 F.3d at 125. If the employer demonstrates a legitimate, non-discriminatory reason, the burden shifts back to the plaintiff to establish, through direct or circumstantial evidence, that the employer's action was, in fact, motivated by discriminatory retaliation. *Id.*

*Hampton*, 554 F. Supp. 3d at 523.

Here, the only action that would fall within the relevant period would be Fox's October 7, 2019 termination. This is also the only plausibly retaliatory act that Plaintiff identifies. *See, e.g.*, *Sylla v. New York City Dep't of Educ.*, 664 F. Supp. 3d 311, 326 (E.D.N.Y. 2023) (analyzing claim for unlawful termination under the *McDonnell Douglass* framework); *Calixte v. Acacia Network*, No. 19-CV-2039(MMH),

2023 WL 27334646, at *6 (E.D.N.Y. Mar. 31, 2023) ("Examples of materially adverse employment changes include termination of employment . . . ."); *Gold v. Titlevest Agency LLC*, No. 18 Civ. 935(AJN), 2020 WL 2835570, at *8-9 (S.D.N.Y. June 1, 2020) (evaluating whether the plaintiff's termination was retaliatory).  Applying the standards above, Fox fails to identify an issue of fact for several reasons.

First, Plaintiff fails to establish that she engaged in protected conduct of which Defendants had knowledge.  Neither Russo nor Kotsovolos were aware of Fox's alleged complaints made during an investigation related to another employee.  *See* Pl.'s 56.1 Counterstmt. ¶ 97; Russo Decl. ¶¶ 20; Kotsovolos Decl. ¶ 14.  Fox did not make an independent complaint of gender-based discrimination.  Instead, she sat for an interview after another employee complained about Guy.  To this end, Fox concedes that there is no record that she complained in April 2018.  *See* Pl.'s Opp'n at 11.  She acknowledges, however, that Defendants kept records – for which Plaintiff herself was interviewed – with respect to complaints from a fellow female co-worker. *Id.*  This belies Fox's claim that she engaged in protected conduct that played a role in how Defendants treated her.  At the end of the day, Plaintiff offers no evidence that her termination was related in any way to her participation in the investigation of another employee.

The Court does not doubt that Guy was a discourteous or unpleasant co-worker.  Nevertheless, this, alone, is not actionable and Plaintiff fails to identify any retaliatory conduct that Defendants took based on her membership in a protected class. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81, 118 S. Ct. 998,

1002 (1998) ("Title VII is not a general civility code for the American workplace.") (internal citation omitted); *Rivera v. Rochester Genesee Regional Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) ("'It is axiomatic that mistreatment at work, whether through subjection to a hostile environment or through [other means], is actionable under Title VII only when it occurs because of an employee's . . . protected characteristic.'") (quoting *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)); *Browne v. New York State Dep't of Corrs. & Comm. Supervision*, No. 21-CV-5240(PMH), 2024 WL 917610, at *8 (S.D.N.Y. Mar. 4, 2024) ("The episodic, isolated, and unpleasant exchanges Plaintiffs had with their co-workers, cannot be the basis of a hostile work environment claim because the is no evidence of a link between the alleged hostile conduct and Plaintiff's membership in a protected class."); *Rissman v. Chertoff*, No. 08-CV-7352(DC), 2008 WL 5191394, at *4 (S.D.N.Y. Dec. 12, 2008) ("In essence, plaintiff alleges that because he was yelled at [by his supervisors], this must have been because of his [protected status].").  Moreover, neither Ms. Russo nor Ms. Kotsovolos had knowledge of the contents of any of the interviews conducted by Human Resources such that they could have retaliated against Fox.  *See* Russo Decl. ¶¶ 20-21; Kotsovolos Decl. ¶ 14.

With respect to the final factor of the *McDonnell-Douglas* analysis, Defendants offer an undisputed, non-pretextual basis for Fox's termination.  Specifically, Fox repeatedly violated multiple employee policies, including the Absenteeism Policy and the Code of Conduct.  *See* Russo Decl. Exs. J-P.  Fox does not dispute—and the evidence supports—that that she repeatedly engaged in the conduct that resulted in

suspensions and her ultimate termination. *Id.*; *see* Pl.'s 56.1 Counterstmt. ¶¶ 112, 119. Plaintiff does not dispute the requirements arising under the Code of Conduct, that she violated the Code of Conduct, or that her termination was based up on her violation of the Code of Conduct. *See* Pl.'s 56.1 Counterstmt. ¶¶ 109, 112, 119, 138-39. In fact, as early as October 31, 2018, she was informed that "failure to follow policy and disregard will result in further disciplinary actions up to and including termination." *See* Katsovolos Decl. Ex. B. To this end, Plaintiff's claim that she "received stellar reviews for job performance," *see* Pl.'s Opp'n at 8, is immaterial. Although both reviews she cites state that Fox was an "integral member of the Perioperative team" and that she "demonstrates the skills and knowledge necessary," *see* Russo Decl. Exs. D, G, they also state that she "will need to reflect on her own professional behavior . . . ." *Id.* These reviews, while containing favorable language, do not establish pretext. *Orisek v. Am. Inst. of Aeronautics & Astronautics*, 938 F. Supp. 185, 191 (S.D.N.Y. 1996) ("[The plaintiff's] own disagreement with her employer's perceptions of her job performance does not satisfy her burden of showing that the [defendant's] proffered justification was a pretext for discrimination.") (citing *Meiri,* 759 F.2d at 995). Simply put, Plaintiff fails to establish the reasons cited for her termination were pretextual.

Finally, relying on *Meiri v. Dacon*, 759 F.2d 989 (2d Cir. 1985), Plaintiff claims that, "[h]ere, as in *Meiri*, the Plaintiff raised a genuine issue of fact as to whether Defendant's expectations were legitimate and whether the Plaintiff was set up for failure and targeted." Pl.'s Opp'n at 9. This argument ignores *Meiri*'s ultimate

holding. There, the Second Circuit affirmed summary judgment, observing that, "[t]o allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases." *Meiri*, 759 F.2d at 793. Fox has failed to identify any "concrete particulars" related to gender-oriented discrimination and her claims are, therefore, deficient. Ultimately, Fox fails to demonstrate that she was subjected to gender-related discrimination, that her gender played a role in her termination, or that Defendants retaliated against her for complaining about Guy. Fox concedes that Northwell has a policy prohibiting, *inter alia*, "obscene language or gestures." Pl.'s 56.1 Counterstmt. ¶ 21. As described above, Fox does not dispute that this was the basis of her termination, nor does she plausibly demonstrate that the basis for her termination was pretextual. To the contrary, she concedes that she engaged in the conduct that formed the basis of her termination. *Id.* at ¶ 121. Moreover, insofar as Fox disputes the relevance of her numerous violations of the Absenteeism Policy, *id.* at ¶¶ 72, 81, 94, 113, 133, there are multiple documented complaints against her for other violations of the Code of Conduct, including those that are cited as the basis for her termination. Russo Decl. at Exs. J-P.

Based upon the foregoing, Plaintiff's claims are both untimely and meritless. Accordingly, Defendants' motion for summary judgment is granted.[6] *Cherry v. New*

---

[6] Having concluded that Plaintiff's Title VII and NYSHRL claims fail, her claim for aiding and abetting under the NYSHRL also fails. *Aiken v. MTA New York City Transit*, No. 18-CV-11756(GBD)(DF), 2021 WL 4481094, at *6 (S.D.N.Y. Sept. 29, 2021) ("[A]iding and abetting 'is only a viable theory where an underlying violation has taken place.'") (quoting *Moore v. Metro. Transp. Auth.*, 999 F. Supp. 2d 482, 510 (S.D.N.Y. 2013)).

*York City Housing Auth.*, 565 F. Supp. 3d 140, 161 (E.D.N.Y. 2021) (granting motion for summary judgment on the plaintiff's gender-based claims where there were multiple documented instances of misconduct); *see Meiri*, 759 F.2d at 793.

## IV.    CONCLUSION

For the reasons set forth herein, Defendants' motion for summary judgment is granted in its entirety.  The Clerk of the Court is respectfully directed to enter judgment in favor of Defendants and to close this case.

Dated:    Central Islip, New York             **SO ORDERED**
          September 29, 2025

                                               s/ Steven I. Locke
                                               STEVEN I. LOCKE
                                               United States Magistrate Judge